Good morning, Your Honors, and may it please the Court, my name is Daniel Ryan, I'm here on behalf of the appellants. At this time, I'd also like to reserve five minutes for rebuttal. Now, looking at these issues that are presented in the appeal that the appellant brings up, I think it makes the most sense to take them in sort of a chronological order, a logical order, and my first issue presented to you that I'd like to discuss is whether the lower court statements that an insurer does not have a duty to settle a claim prior to receipt of a demand constitutes an abuse of discretion that tainted the jury's verdict. Now, okay, does an insurer have a duty to settle a case prior to receipt of the demand? Well, I'll tell you what, in Nevada, there's not a direct case on point on this. I was unable to cite one. The other side wasn't able to cite one. What is in Nevada is the case of Allstate v. Miller, and I'm sure, 90% sure anyway, that the court has reviewed that case prior to this hearing today. And basically, Allstate v. Miller stands for the proposition that at a bare minimum, an insurer must give its insured equal consideration of its interests as its own. And that is a general duty. That's a general rule of law. That duty applies. And if you look at Allstate v. Miller, while the case is actually about the duty to defend, Allstate v. Miller does say that the duty to defend stems from this general duty of equal consideration. And the reason why I'm stating this is because I'm trying to establish to the court that this duty is arising early. And it's not only reflected in Allstate v. Miller, it's also reflected in NRS 686A.310, the Unfair Claims Practices Act, which in itself is a separate cause of action. However, it does say that an insurer can be liable for failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear. There's no mention in there whether or not it's pre-demand, post-demand. That's the standard that's found in that statute. Sotomayor, let's just assume that this was a misstatement by the court. What difference did it make in the trial? Well, it makes a huge difference, because basically you're asking the jury, well, you're telling the jury that No. Was this a key? I'm asking, was this an issue that was, was this ever argued to the jury? What the judge said, was it a theory of either side? What's the issue? The issue basically came up more or less when plaintiffs or appellants counseled in the court below was trying to establish that the insurance company has a duty before, and the lower court judge said that there is no duty, that there is no duty for an insurance company. Well, it came up in the course of a hypothetical. It came up in the course of a hypothetical, and the judge, I mean, flat out said that there is no duty for them to. And the judge, the objection was that they're assuming facts that are not inevitable. Right. Assuming facts not inevitable. Which was true. Correct. And the objection was sustained, and then the statement was made. Right, right. And the statement was made. And also, there's other parts of the trial, although they were not specifically objected to it, I mean, it's the judge saying it, but the context of the case was framed in focusing on the demand letter. What did the insurance company do after the receipt of the demand letter? I mean, that was, that could be found on, here's a couple of references. The letter that said that you have to respond. Correct. Within two weeks. Correct, the demand letter. So more or less, I mean, it's very important, because what you're telling the jury in those circumstances is more or less this. Is that you, all you have to do is consider a period of two to three weeks. Basically, the demand letter was sent on September 13th, 2000, gosh, I want to say 2004. Well, it was sent on September 13th, and then the insurance company ended up tendering on October 4th. And what you're telling the jury is you don't have to, you don't have to incorporate any of this activity. Is there an instruction to the jury on this? I'm just trying to understand. There was, there was. It seems like, to me, I'm just speaking for myself, it seems like a kind of a casual statement that was never, and I'm just wondering what significance it played in the trial. Was the jury instructed there is no duty? Was the, was this, did the lawyer for the insurance company quote the judge in oral argument to the jury? The, the, well, the lawyer in the, first the judge said there is no such duty. He was not instructing the jury. No. He was ruling on an objection. He was ruling on an evidentiary objection, correct. And afterwards, during closing arguments, and it kind of bleeds into the second issue that I'm, that I'm here to discuss about the setup, but I'll, I'll, I'll push into that a little bit more. But it, it, it bled into that because now, okay, our, our, our attention is overtly focused on this timeframe. Now, if I could kind of continue where I left off, where, you know, it's, as the Court is well aware, where, you know, the law is unclear, we'll look to existing law in a state, and then we'll look to persuasive law from other jurisdictions. Well, the case of Fulton v. Woodward, which is an Arizona case, says that the duty for an insurer to give equal consideration to its insured interest is triggered as soon as there's a high potential of claimant recovery and high potential of damages exceeding the policy limits. And what times are those? Well, there's other cases out of Cal, out of Florida, indicating facts that are very similar to the facts at hand in this case. The case of Hartford v. Mathis dealt with a brain injury. It dealt with a case where an adjuster noted liability very early in the notice of the claim. The case of Powell v. Prudential dealt with a case where, again, liability was determined within days, and attorneys sent correspondences detailing the severity of the injury. In that case, the Court said, where liability is clear and injuries are so serious that a insurer has an affirmative duty to initiate settlement negotiations. This very Court, the Ninth Circuit, in the case of Yang-Fang Du, held the same when interpreting California law. That's all interesting and true. I'm curious what's going on here, though. Okay. I think Judge Navarro in AAA Nevada v. Chow noted that the law firm here, I guess your law firm, I'm trying to figure out if you're still, if you're with the law firm that was involved. Yeah. Practice, or she may have said modus operandi, is to demand settlement within two weeks and then sue the insurance company for bad faith when they inevitably fail to meet that deadline. And she cited the case, she cited to this case Hicks v. Dairyland and Farmer Hunter. After her opinion, Judge Dawson made the same observation in, I think it's Kelly v. CSE. So, you know, it's five cases in which you demanded settlement within two weeks. I'm curious, did your firm prevail on any of those bad faith actions? And do you, does your firm still continue to demand within two weeks settlement? Well, it kind of puts me in a difficult position. One, I've only been with the firm for a year. Those cases were around for much, were decided and argued and the demands went out long before I was there. Right now, the firm does not send out two-week demand letters. But, I mean, really, I think that ---- What's the justification for the two-week demand? I mean, hasn't it resulted in ---- And I think that the, I think that what we're kind of talking about is a difference of construction of the duties of an insurance company. The reason for the two-week demand timeline, in a case like this anyway, is because the insurance company has ample information at its disposal long before that insurance policy demand letter is sent out to make a determination as to liability and as to whether or not the policy limits or the claimant's damages are going to exceed the policy limits. Well, within two weeks, though, I mean, if there's any follow-up, I'm not sure that that's, I mean, the ample or the amount of information they have. There may be some other things in people's schedules. It seems like that's what occurred here. But it just seems to me, I mean, that practice may result in massive delays. And I don't know if that's occurred for your clients as, you know, try to, you know, unsuccessfully litigate these bad faith claims. I'm just trying to figure out what is the reason for that. It seems like the CCIE has spent over half a million dollars in this bad faith litigation. We haven't gotten to legal fees yet, but maybe you can answer why you shouldn't pay their legal fees. Well, I don't think that a case that survives multiple motions, I mean, if we're talking about, I mean, there was multiple motions for summary judgment. There was multiple motions for, there were motions to dismiss. There were motions to disqualify. There was even a summary judgment motion on punitive damages. All of those motions were denied. The court looked at this case and thought that it had some viable things about it. And, you know, I'm put in a difficult position because, you know, and I encounter this situation with courts that I read the law, and I'm reading what the duties of an insurance company are, and I'm reading the priority and the treatment that there is. It's not priority, but equal consideration that they're supposed to be giving their insureds. And I look at a case like this, and to be honest with you, I don't understand why when the insurance company has this information and it has the identity of the claimant, why it's not taking any measures. But didn't it do something a week later? It didn't do anything a week later. On August, by August 23rd, well, I can go. I have a little bit of a time. I mean, but all that faith is, you know, all about whether or not the other side, you know, the insurance company was unreasonable. And here it looks like a lot of cases, you know, two weeks to respond to, you know, a settlement offer, or in this case, I guess it was three weeks, doesn't, you know, the question is whether that's unreasonable. And one of the issues that we have to consider today is, you know, evidence of your firm's conduct and whether it was relevant to determine whether the deadline was reasonable. So I'm just curious. Right. Again. Especially if your firm has a practice of doing this, although maybe they've halted that. It has been halted. And I'm not, it's a difficult position because I'm not trying to say that we halted it because it's wrong. We're halting it because we're met with, you know, the. We keep losing. Because we keep losing. Fair enough way to state it. But again, it's, when, in this case, on August 23rd, when the insurance company has the statements from a police officer, they see the news report, they have the identity of the claimant, they know all this information, why is it that they don't have an obligation to settle the case when they get a letter of representation? Why don't they step out and settle the case? So when we later on, a couple weeks later, send a demand letter, I don't, it's confusing to me why an insurance company who has these duties is in receipt of this letter or before that, even before the demand letter, in accordance with this law that I see, that I see the Ninth Circuit even talked about in Yang Feng Du. I know that the opinion was amended because in that specific case, the reason it was amended was because they found that the plaintiff's attorney did not submit enough evidence to get an instruction that the duty to settle is before the demand. And that's because the person in Yang Feng Du, the attorney, all he presented was statements from himself and statements from the client. So the Ninth Circuit, in its revised opinion of Yang Feng Du, said, okay, we're going to revise this because we don't think he's entitled to the instruction because he didn't submit enough evidence. But there is enough evidence in this case to suggest that that duty to settle was there. But aren't there usually medical records that are involved in a lot of these? And doesn't it take time sometimes to get medical records? And, you know, is that the reasonableness of your request? It does. And medical records is not the standard, though. The standard is whether or not the insurer is giving equal consideration. The standard is whether there's a substantial likelihood in excess of the policy limits. The standard is not whether you have a medical bill or you wait for a medical request and then get something and go back. That's not the standard. And that's really where our firm, to say, you know, at least to protect the name and these proceedings since it's been brought up, is where we're coming from. I mean, we read the standards and we try to hold insurance companies to those standards, especially in situations where we're dealing with a case where there's critical injuries or a wrongful death. We don't understand why in a case with critical injuries or wrongful death why it takes an insurance company three to three and a half months to pay out the claim. And you argued that to the jury? I believe that. That was argued to the jury. I believe it was argued, correct. But, again, jury. Well, you're here representing. You should know the record in this case. It seems like that was argued to the jury. It was argued to the jury, but it was also cut off by, and let me use that to segue into the next issue. It was cut off by the efforts of defense counsel to frame this thing entirely around the demand letter. And to frame it around that, to state, not entirely framed, but sufficiently enough to permeate the trial that multiple references to this being a setup. In Allstate v. Miller, again, the insurance company in that case brought a motion in limine that, or excuse me, the lower court excluded any evidence of attorney motives, and the Nevada Supreme Court affirmed that. It said that it's without merit. And the U.S. District Court did the same thing in Kelly v. CSE. There's an order. Granted, the order is about a motion to disqualify. But the reason that they decided not to disqualify is because they say that the attorney motives are irrelevant. There's another order on the excerpt of record page. You said you wanted to reserve five minutes. You're down to four. Oh, correct. Okay.  Uh-huh. Good morning, Your Honors. May it please the Court. My name is Kim Cushing. I represent the Respondent, California Casualty Indemnity Exchange. I was also the trial counsel for California Casualty in the lower district court. It is a pleasure to be here today. Briefly, I would like to respond to the arguments made by the appellant. There was no judicial error here by Judge Jones. The plaintiff is not appealing the questions of fact that were made by the jury. He's appealing little parts of a trial that are on the abuse of discretion and is also arguing for the first time on appeal that California law or some aspect of California law should be applicable to Nevada. The trial judge correctly stated Nevada law under Nevada Revised Statute 686A.310. That is the statutory provision that governs insurance companies and proper claims handling. That was part of the jury's instruction. In response to Judge Schroeder's question earlier, there was no jury instruction or argument at time of trial about this new duty that should apply. That didn't happen. That was brought up for the first time on appeal. Under Nevada law, now granted, Nevada is sometimes considered the wild, wild west in terms of its lack of laws. But believe it or not, Nevada does have a statute that deals with insurance companies and the proper way to handle claims. This, Your Honors, was a jury trial. The plaintiff real party interest was dead. The defendant was an insurance company being sued for punitive damages. This was not an easy case. Yet the jury heard all of the evidence over five days. It heard from Michelle Minor, the claim representative. It heard from her boss. The entire claims file was admitted into evidence, and every single record was gone through by Respondent's Counsel, vigorous cross-examination. The jury, at the end of those five days after hearing all of the evidence, unanimously returned a defense verdict in less than two hours. So to argue that the jury, as the trier in fact, was uninformed is not correct. The questions brought forth by this court involve questions of reasonableness. What did California Casualty know? When did they know it? How did they react? How did it adjust the claim? The jury heard all of those arguments. The jury assessed the credibility of the witnesses. Assessed the credibility of the employees of California Casualty. And it made the determination that California Casualty acted properly. And in fact, went overboard to try and settle this claim with these arbitrary two-week time limit demands. Both Your Honors have talked about the M.O., if you will, of this law firm.  The claim representative has to assess the nature of the information that comes into her. She has to make decisions. What did California Casualty know at this two-week time limit demand? It's in the record. Nothing. An out-of-state insurance company knows the name of a person who's in a coma. No date of birth. No social number. The other thing that it knew was it was at a UMC facility in Nevada. No address. No nothing. And a blank HIPAA authorization. Well, the court can take judicial notice. It takes more than two weeks to get medical records without a HIPAA authorization. It took three months in this case. California Casualty did the best it could with the extremely limited information that it had. All they had to do was give California Casualty a single medical record to justify paying out the claim in two weeks. All they had to do was one single record. And the record, and we brought this forth in closing argument, there's absolute proof that this was a setup from day one. And I proved it in closing argument. California Casualty asked for the amount of medical bills or anything. They kept claiming that we don't know anything, go get it yourself. But on day 14, the day of the expiration of that two-week time limit demand, previous counsel signed a complaint for bad faith that had the exact amount of Mr. Tabutu's medical records to the penny. They had that, and they refused to provide it. The jury heard that and obviously were incensed. What about when the district court stated there was no obligation to settle prior to demand? Did that deprive the plaintiff of their theory of the case? Thank you, Judge. Presenting their theory of the case. First of all, in response to your question, I think it was Justice Schroeder's question, there was not a jury instruction to that fact, and it was in response to a hypothetical. That was not part of the jury instructions. Judge Jones provided NRS 686 verbatim and appropriate jury instructions in that regard. There was no creation of this Yang Feng Du duty that's apparently part of new California law. That was not part of the trial. Our argument is that today, even today, 686 controls. The Nevada Supreme Court has not modified or questioned the constitutionality of 686. It has not expanded 686. The Nevada legislature has not changed 686. 686 is modeled after most states unfair claims trade practices act, which is very minor differences. But the creation of a duty to settle before a claim is being made, which was in response to a hypothetical, was not brought before the jury in terms of a jury instruction. And in regard to Justice or Judge Schroeder's question, what difference did it make? None. Because it all goes back to reasonableness, which by definition is subjective and goes to the trier of fact. The trier of fact in this case heard everything. The entire claims file was introduced into evidence without objection. Every single note, claim, record, phone call. The claim's gesture was extensively cross-examination. So there's nothing in the record to show that the judge incorrectly applied the law in this case, because it's all set forth in your brief. It is. In regard to the setup, just briefly, I would like to mention, and I'm glad the Court caught the fact that there are cases out there from Judge Navarro in Nevada, Judge Dawson in Las Vegas, in regard to this does not occur in a vacuum. Let me just ask a couple questions. You know, I'm sympathetic to your request for fees, given that the multiple courts in Nevada have suggested, you know, something may be happening here with these kind of bad faith claims that are brought forth. But didn't you also refuse to play the claim without a release? And, you know, isn't there an argument that that was unreasonable? Well, on day 21, California casualty made a business decision, threw out the book and said, you know what, it's not worth it, let's pay it anyway. Offered the $15,000 to counsel with the release, yes. However, the plaintiff attorney refused to accept it. There were three more occasions where California casualty actually wrote the check out and sent it to them without a release. They held on to those checks and didn't cash them. There was a $50,000 offer of judgment, which was made in 2010, which they didn't accept. So in response to your question, yes, there was initially a release, which was there was no communication, hey, we'll take the money, but we won't sign the release. It was just flatly rejected. And like I said earlier, three more occasions, they actually sent checks out, which they held on to. How much later after that? It was in 2006, 2007, and then 2009. 2010 was the $50,000 offer of judgment. Sotomayor, if you are entitled to Rule 68, post-offer costs, do we need to remand that to the district court, or do we decide that here? I will leave it in this Court's sound discretion to do whatever is necessary. We, as I mentioned in my opening statement before the jury, this entire case is about seven days. Seven days. And almost $600,000 later, here we are, because they didn't take the case. And the record is replete with evidentiary support for our motion for attorneys' fees and costs. I would leave that to this Court's discretion. What did the district court say? At first, the district court awarded costs. It was $39,000 and change. Then subsequently, in a subsequent hearing, of which there were many, the court just reversed its decision, his decision, and said, well, because you prevailed on the breach of contract, you're a winner, and because you prevailed on the tort statutory claims and the punitive damage, you're a winner, so you both cancel each other out and walk away. What are the elements of the $600,000? I'm sorry, Your Honor? What are the elements of the $600,000? The elements are the, in terms of what we had to pay for in terms of prosecuting this bad faith case. That was my attorney's fees and the cost, and that was all brought forth in the record in terms of very specific itemization of fees. And in light of the district courts of Nevada and other courts in other jurisdictions which have this similar scheme, which fortunately, admitted in this case, is being done, this is now not, this doesn't exist anymore, at least as far as I'm aware of. But we should not have had to go through all of this. Are you asking for attorney's fees on appeal? I am. On appeal? Yes. If we affirm the verdict here, do we need to reach the question of whether the assignment regarding Mr. Ramirez was valid? No, Your Honor. Thank you for asking. If the Court is inclined to affirm the jury verdict, we will rest on that and don't need to go into the other side issues, except for we would leave it in the Court's discretion in regard to attorney's fees and costs. Thank you so much. Thank you. Mr. Ryan. Well, obviously from what counsel is saying, with all due respect, is that, you know, there was no, obviously no holding back on saying that this was a setup numerous times throughout the trial. And he's done nothing to talk about Allstate v. Miller and what Allstate v. Miller says. And furthermore, I'll concede that there are some cases outside of Nevada that allow a setup or mentions of a setup to be used, but they are used in the context of an affirmative defense. They're used in the context that the defendant has the burden to prove them. There was a specific colloquy in the lower court regarding whether or not the defendant had these affirmative defenses, and the Court said, no, he does not. They all go to reasonableness. And that is not true. The conduct of the insurance company is independent of the conduct of the claimant and his attorney. And if they're going to argue that the conduct, the claimant and the claimant's attorney conduct is relevant, well, again, as I said, it's not recognized under Nevada law. And even if the judge would have allowed it, he should have recognized that that's their burden to do. Instead, what he did was he intermingled our burden, which is to prove unreasonable conduct on behalf of the insured, with having to justify ourselves for what we did. It's confusing the questions. The question is not our conduct. The question is not what did the claimant's attorney do. The question is, did the insurance company act quickly, promptly? Did they effectuate a reasonable settlement fast? Reasonably. And that's the question. And if we're going to intermingle our burden with this setup, and now, you know, the Court's talking about attorney's fees, well, I, with all due respect, I'd have to urge that if you look at the cases that are cited by defendant or, excuse me, the appellee, and if you look at the cases that are cited specifically, Allstate v. Miller deals with this specifically, that it's in regards to the duty to inform, which is tangential to this case or not included. But in that specific case, the Vada Supreme Court said, all right, if you're going to say that the claimant was not going to settle the case, that this thing was, you know, set up, that there was no realistic possibility of settlement within the policy limits, well, guess what? You, the insurance company, has the burden, affirmatively, to prove that. And it's not intermingled with us. It's not a general defense. They have to have an instruction on it, which the judge said he would not give. In regards to the cost of attorney's fees, Your Honor, I think that the briefs are the reply brief sufficiently lays out the arguments, and I don't know if I'll bring up any additional arguments at this time. Let me ask you just two quick questions on the costs. You weren't awarded any costs in this case. So I'm just trying to figure out, well, why should we include costs in calculating the final judgment obtained for purposes of Rule 68? Well, it's my understanding that that rule is, it separates from the costs that were already incurred at that point. So if they did an offer of judgment, then the costs were supposed to be discounted out, and that the offer of judgment would be lower than the actual, the 15,000 that was recovered at the end of the trial by us. And assuming CCIE is entitled to post-offer costs, are you disputing the amount of costs that they are claiming? I'd have to rely on the pleadings, but I think that that was a fully briefed at the lower court level. To be honest, I didn't know that the court would be determining the amount of those costs. I thought that a remand, at least if that's going to be the situation, would be appropriate. I thought that there could be brought back before the judge who had the entire thing to make that determination. And if that really is the court's ultimate decision, I think that a remand would be appropriate so that we have the right to fully brief the issue and at least provide ourselves a defense to that. All right. Thank you very much. Thank you both for your arguments here today. The case is submitted.
judges: Schroeder, Noonan, Murguia